J-A05046-21

2021 PA Super 82

| ALLEN F. LYNDES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PENN CENTRAL CORPORATION A/K/A | : | No. 1408 EDA 2020 |
| AMERICAN PREMIER | : | |
| UNDERWRITERS, INC. AND | : | |
| CONSOLIDATED RAIL CORPORATION | : | |
| AND NORFOLK SOUTHERN RAILWAY | : | |
| COMPANY | : | |

Appeal from the Order Entered April 28, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180900918

BEFORE:   OLSON, J., NICHOLS, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED:  APRIL 29, 2021**

Appellant Allen F. Lyndes ("Mr. Lyndes") appeals from the order granting the motion filed by Appellees Penn Central Corporation a/k/a American Premier Underwriters, Inc. ("American Premier"),[1] Consolidated Rail Corporation ("Consolidated Rail"), and Norfolk Southern Railway Company

_____

[*] Former Justice specially assigned to the Superior Court.
[1] Penn Central Corporation ("Penn Central"), which was incorporated in Pennsylvania with its corporate headquarters in Philadelphia, filed for bankruptcy and ceased all railroad operations in the 1970s.  All properties of Penn Central became properties of the trustees in Penn Central's bankruptcy. Thereafter, as part of the Regional Rail Reorganization Act, 45 U.S.C. § 701 *et seq.*, Congress created Consolidated Rail, and all employees of Penn Central were offered continued employment with Consolidated Rail. American Premier is a successor in interest to Penn Central's non-railroad assets and is primarily engaged in the business of insurance.

("Norfolk Southern") (collectively "Appellees") to dismiss Mr. Lyndes' complaint filed in the Court of Common Pleas of Philadelphia County based on the doctrine of *forum non conveniens*, for re-filing in a more appropriate forum. After careful review, we affirm.

The relevant facts and procedural history are as follows: Mr. Lyndes, a resident of Beaver Falls, Pennsylvania, instituted this action pursuant to the Federal Employers' Liability Act ("FELA")[2] against three corporations: American Premier, which is incorporated in Pennsylvania with an address for service in Harrisburg, Consolidated Rail, which is incorporated in Pennsylvania with a principal place of business in Philadelphia, and Norfolk Southern, which is incorporated in Virginia with an address for service in Norfolk.[3]

Mr. Lyndes averred Appellees conduct business in and have substantial contacts with Philadelphia. He specifically averred Appellees are "engaged in interstate commerce as a common carrier by rail, operating a line and system of railroads and transacting substantial business in the Commonwealth of

---

[2] 45 U.S.C. §§ 51-60.

[3] In July of 1998, the Surface Transportation Board approved a plan by which Norfolk Southern Corporation and CSX Transportation acquired Consolidated Rail through a joint stock purchase, and they split most of Consolidated Rail's assets between them. CSX Transportation and Norfolk Southern Corporation took administrative control of Consolidated Rail on August 22, 1998. CSX Transportation is not a party to this litigation.

Pennsylvania, including Philadelphia County." Amended Complaint, filed 11/8/18 (unpaginated).[4]

In his amended complaint, Mr. Lyndes averred that, from 1974 to 2007, he was employed by Appellees as a trackman and machine operator at various yards and buildings in and around Lorain, Ohio, Dearborn, Michigan, Chicago, Illinois, and Pittsburgh, Pennsylvania. He further averred that, as a result of his job duties, he was exposed to chemicals and cancer-causing substances, which resulted in his development of bladder cancer. He posited Appellees were negligent in failing to provide him with a reasonably safe workplace as required under the relevant statute.

In discovery, Mr. Lyndes conceded that he never worked for Appellees in Philadelphia, but primarily worked for Appellees in Lorain, Ohio. Mr. Lyndes did not provide any confirmation that he worked for Appellees in Pittsburgh or anywhere in Pennsylvania. Instead, Lyndes claimed that he worked as an Assistant Track Supervisor in the "Pittsburgh Division" in Ohio while working for Norfolk Southern from 2000-2003. Lyndes' Answer to Interrogatories (unpaginated). Mr. Lyndes also admitted that none of his former coworkers or supervisors lived in Pennsylvania.

On February 18, 2020, Appellees Consolidated Rail and Norfolk Southern filed a joint motion to dismiss under 42 Pa.C.S.A. § 5322(e) and the doctrine of *forum non conveniens*. Thereafter, on February 19, 2020, Appellee

---

[4] Mr. Lyndes filed a complaint on September 11, 2018 and an amended complaint with court permission on November 8, 2018.

American Premier filed a motion to join, adopt and incorporate by reference the motion to dismiss filed by the other Appellees. In support of their motion, Appellees attached Mr. Lyndes' answers to Appellees' request for admissions and interrogatories, as well as orders from the Philadelphia County Court of Common Pleas granting forty-five motions to dismiss based on *forum non conveniens* in other FELA lawsuits with similar circumstances in which the plaintiffs did not reside or work for the railroads in Philadelphia.

Relevantly, Appellees asserted that Mr. Lyndes never worked for Appellees in Philadelphia, nor was he injured as a result of any conduct on the part of Appellees that took place in Philadelphia County. Appellees' Motion to Dismiss, filed 2/18/20 (unpaginated). Appellees attached Mr. Lyndes' responses to their interrogatories in which he confirmed that he worked for Appellees primarily in Ohio, but also in Illinois and Indiana. ***Id***.

Appellees emphasized that, in discovery, Mr. Lyndes admitted that all of the individuals he intended to call as witnesses are residents of Ohio or live in locations closer to Ohio than to Philadelphia. ***Id***. In his responses to Appellees' interrogatories, Mr. Lyndes identified as potential witnesses his former supervisors: Paul Blodgett, Jim Stump, Ed Boyle, and Larry Johnson. Mr. Lyndes alleged that Mr. Blodgett lived in Ohio, Mr. Boyle and Mr. Johnson lived in Illinois, and Mr. Stump was "located in Dearborn Division." Lyndes' Answer to Interrogatories (unpaginated). Appellees assert that they would rely in part on the testimony of Mr. Lyndes' former supervisors, superintendents, and/or co-workers who have direct personal knowledge of

- 4 -

Mr. Lyndes' job duties and job requirements. Appellees' Motion to Dismiss, filed 2/18/20 (unpaginated).

In addition, while Appellees acknowledged that Mr. Lyndes would testify on his own behalf and intended to offer the testimony of his wife, Shirley Lyndes, Appellees noted that the couple lives in Beaver Falls (western Pennsylvania), which is significantly closer to Ohio than Philadelphia (eastern Pennsylvania). *Id*. Moreover, Appellees noted that Mr. Lyndes never received medical treatment in Philadelphia for the illness underlying the instant action. *Id*. As Mr. Lyndes was diagnosed and treated for bladder cancer by physicians in medical facilities in western Pennsylvania (Butler County and Allegheny County), Appellees asserted that Mr. Lyndes' treating physicians and his medical records are more accessible to the parties in Ohio, rather than in Philadelphia County. *Id*.

Further, Appellees asserted that they would be denied the availability of compulsory process to compel the attendance of unwilling out-of-state witnesses to travel to Philadelphia for trial. *Id*. In addition, Appellees claimed that even if the witnesses, most of whom are located in or near Ohio, were willing to attend proceedings in Philadelphia, Appellees argued that the cost of obtaining their attendance would be great and unnecessary, particularly where this case would be more conveniently filed in Ohio. *Id*. Appellees admitted that they had not determined whether a site visit by the jury would be necessary during trial, but argued that the possibility of a site visit in Ohio is a factor that weighs in favor of dismissal. *Id.*

Moreover, Appellees argued that there was no reason to burden the courts, taxpayers and jury pool of Philadelphia County with matters that would be more appropriately resolved in Ohio. *Id.* Appellees claimed that citizens of Philadelphia County would have a minimal interest in the litigation in deciding issues relating to the working conditions of an individual who worked over hundreds of miles away in Ohio. *Id*.

Based on the aforementioned arguments, Appellees averred the instant action has no *bona fide* connection to Pennsylvania, and dismissal of the action is proper since there is a more convenient forum where litigation could be conducted more easily, expeditiously, and inexpensively. Additionally, Appellees reasoned the only connection between Pennsylvania and the instant matter is that Appellees conduct unrelated business operations in Philadelphia. However, Appellees argued these connections are not related to Mr. Lyndes' claim that he suffered injury while he worked as Appellees' employee in Ohio.

Appellees indicated they agreed to waive the statute of limitations if Mr. Lyndes re-filed his action in Ohio within ninety days of the dismissal of the suit in Philadelphia, and agreed not to object on the basis of venue or personal jurisdiction if the matter was re-filed in Ohio, or some other proper forum.

On March 9, 2020, Mr. Lyndes filed a response in opposition to Appellees' motion to dismiss for *forum non conveniens*, as well as a supporting memorandum. Therein, Mr. Lyndes asserted that he was a resident of Beaver Falls, Pennsylvania, but admitted he did not work in or receive medical

treatment in Philadelphia, Pennsylvania. Moreover, he admitted his former co-workers and supervisors reside in Ohio.

However, Mr. Lyndes denied that all of his fact witnesses are located outside of Pennsylvania. Specifically, he indicated:

> [Mr. Lyndes] intends to call four former [Consolidated Rail] management employees to testify in [Mr. Lyndes'] case in chief who actually worked for [Consolidated Rail] in Philadelphia. [Mr. Lyndes] intends to call Marcia Comstock, M.D., [Consolidated Rail's] former medical director, who worked for [Consolidated Rail] in Philadelphia and lives in Wayne, PA. [Mr. Lyndes] intends to call William Barringer, [Consolidated Rail's] former safety director, who worked for [Consolidated Rail] in Philadelphia. Mr. Barringer now lives in Naples, Florida. [Mr. Lyndes] intends to call Ramon Thomas, [Consolidated Rail's] former industrial hygienist, who worked for [Consolidated Rail] in Philadelphia and lives or works in Morrisville, PA. [Mr. Lyndes] intends to call Paul Kovac, [Consolidated Rail's] occupational claims manager, who worked for [Consolidated Rail] in Philadelphia, PA and lives in Hatboro, PA.

Mr. Lyndes' Response to Appellees' Motion to Dismiss, filed 3/9/20, ¶ 8.

Additionally, Mr. Lyndes elaborated that he intended to call the four former Consolidated Rail corporate witnesses because they "were responsible for developing industrial hygiene, safety and medical programs to prevent employees from developing cancer due to exposure to diesel exhaust and asbestos [and] failed to do so in a timely and adequate manner." *Id.* ¶ 15. Mr. Lyndes also indicated that he would ask these four witnesses to "testify as to what the [Consolidated Rail] safety department based in Philadelphia knew or should have known about railroad employees being exposed to toxic substances including asbestos and diesel exhaust and the development of

cancer." ***Id.*** ¶ 15. Mr. Lyndes indicated that he identified these four witnesses in his Second Supplemental Responses to Consolidated Rail's Interrogatories, which he dated March 8, 2020, the day before he filed his response to Appellees' Motion to Dismiss.

Mr. Lyndes contended the current conditions of his railroad workplaces are irrelevant to his working conditions from 1974 to 2007 when he worked for Appellees. ***Id.*** at ¶ 14. Moreover, he averred that, in addition to Consolidated Rail being incorporated in Pennsylvania with its headquarters in Philadelphia, Penn Central was incorporated in Pennsylvania with its corporate headquarters in Philadelphia. ***Id.*** at ¶ 18. Mr. Lyndes also denied that the court, taxpayers, and jury pool of Pennsylvania would be burdened by this case as Consolidated Rail and Penn Central "are members of the Philadelphia community and the jury has every right to determine whether [Appellees] failed to provide [Mr. Lyndes] with a reasonably safe place to work as required by the FELA." ***Id***. at ¶ 33, 35.

On April 28, 2020, the trial court entered an order granting Appellees' motion to dismiss the instant action based on *forum non conveniens* and dismissed Mr. Lyndes' amended complaint without prejudice to his right to re-file in Ohio, or any other appropriate jurisdiction.

Mr. Lyndes filed a timely notice of appeal and complied with the trial court's direction to file a Pa.R.A.P. 1925(b) statement. In response, the trial court filed a Rule 1925(a) opinion setting forth the reasons for its ruling:

In the instant case, the undisputed facts, as admitted by [Mr. Lyndes], strongly favor dismissal pursuant to § 5322(e) and transfer to Ohio. [Mr. Lyndes] is a resident of Beaver Falls, Pennsylvania, about 120 miles from Lorain, Ohio and 338 miles from Philadelphia City Hall. [Mr. Lyndes'] claims of exposure are unrelated to any work he did in Pennsylvania, as [Mr. Lyndes] admits he was never exposed to any hazardous materials while working in Philadelphia County or Pennsylvania. [Mr. Lyndes'] claims of exposure stem from his employment for Appellees in Lorain, Ohio. Any of [Mr. Lyndes'] coworkers that may be called to testify would be greatly inconvenienced in needing to come from Ohio to Philadelphia County, a trip of over 300 miles. All of [Mr. Lyndes'] medical treatment occurred in Wexford, Pennsylvania and Zelienople, Pennsylvania in Western Pennsylvania. Both of these towns, located in Allegheny and Butler County, respectively, are much closer to Lorain, Ohio than to Philadelphia County. All of [Mr. Lyndes'] medical providers, including seven diagnosing and treating physicians, and his medical records are located in these towns as well. [Mr. Lyndes'] admission to these facts makes it clear that weighty reasons exist as to overcome [Mr. Lyndes'] choice of forum and that Ohio is a "more convenient forum where litigation could be conducted more easily, expeditiously, and inexpensively." ***See*** [***Commonwealth v.***] ***Wright***, 215 A.3d [982, 992 (Pa.Super. 2019)] (providing that transfer should be permitted if there is a more convenient forum where the litigation could be conducted more easily, expeditiously, and inexpensively.

[Mr. Lyndes] cites private interests in support of keeping this case in Philadelphia. Specifically, [Mr. Lyndes] avers that he intends to call as witnesses four individuals who worked for Appellees' at their headquarters in Philadelphia. [Mr. Lyndes] argues that these witnesses would be inconvenienced by having trial in Ohio instead of Philadelphia. Even if these witnesses are relevant to [Mr. Lyndes'] claims, the undisputed facts make it clear that a majority of all of the potential witnesses with any connection to the underlying case reside in Ohio or Western Pennsylvania, much closer to Lorain, Ohio than to Philadelphia, thereby establishing Ohio as "more convenient forum where the litigation would be conducted more easily, expeditiously, and inexpensively."

Trial Court Opinion (T.C.O.), filed 8/6/20 (unpaginated).

On appeal, Mr. Lyndes sets forth the following issues in his "Statement of Questions Presented" (verbatim):

1. Whether the Trial Court abused its discretion in finding that weighty reasons existed to support dismissal under the doctrine of *forum non conveniens*.

2. Whether the Trial Court should have considered not only that [Consolidated Rail] and Penn Central were Pennsylvania corporations and that both of their corporate headquarters were located in Philadelphia, PA, but also that four of the Plaintiff's fact witnesses worked for [Consolidated Rail] at its corporate headquarters in Philadelphia, PA.

3. Whether the Trial Court erred in considering the inconvenience of [Appellees'] potential hypothetical fact witnesses over the actual inconvenience of [Mr. Lyndes'] four fact witnesses who would be required to travel to Ohio for trial?

Mr. Lyndes' Brief at 2.[5]

Initially, we note the following principles, which guide our review:

Orders on motions to dismiss under the doctrine of *forum non conveniens* are reviewed for an abuse of discretion. This standard applies even where jurisdictional requirements are met. Moreover, if there is any basis for the trial court's decision, the decision must stand.

An abuse of discretion occurs if, *inter alia*, there was an error of law or the judgment was manifestly unreasonable. When reviewing for errors of law, the appellate standard of review is *de novo* and the scope of review is plenary.

In Pennsylvania, the doctrine of *forum non conveniens*, which originated in Common Law, has been codified by statute:

**Inconvenient forum.-**When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or

---

[5] Although Mr. Lyndes set forth three separate issues in his "Statement of Questions Presented," he intertwines and discusses the issues together in the argument portion of his brief. We shall treat the issues in a similar manner.

> dismiss the matter in whole or in part on any conditions that may be just.

42 Pa.C.S.A. § 5322(e).

***Hovatter v. CSX Transportation, Inc.***, 193 A.3d 420, 424 (Pa.Super. 2018)

(quotation marks, quotations, and citations omitted).[6]

The doctrine of *forum non conveniens* "provides the court with a means

of looking beyond technical considerations such as jurisdiction and venue to

determine whether litigation in the plaintiff's chosen forum would serve the

interests of justice under the particular circumstances." ***Alford***, 531 A.2d at

794 (citation omitted).

> The two most important factors the trial court must apply when considering whether dismissal is warranted are that "1.) the plaintiff's choice of forum should not be disturbed except for 'weighty reasons,' and 2.) there must be an alternate forum available or the action may not be dismissed."
>
> ***
>
> [W]ith respect to the initial factor, we note that "a court may find that the presumption in favor of a plaintiff's choice of forum may be less stringently considered when the plaintiff has chosen a foreign forum to litigate his or her claims." Furthermore,
>
> > To determine whether such "weighty reasons" exist as would overcome the plaintiff's choice of forum, the trial court must examine both the private and public interest factors involved. ***Petty v. Suburban General Hospital***, 525 A.2d 1230, 1232 (Pa.Super. 1987). The ***Petty*** Court reiterated the considerations germane to a determination of both the plaintiff's private interests and those of the public as

---

[6] Our courts lack the authority to transfer matters to courts of our sister states; but rather, when appropriate, our courts should dismiss the action to permit re-filing in another state. ***See Alford v. Philadelphia Coca-Cola Bottling Co., Inc.***, 531 A.2d 792 (Pa.Super. 1987).

defined by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839 (1947). They are:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the actions; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to a fair trial.
>
> ***
>
> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is appropriateness, too, in having the trial…in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Hovatter*, 193 A.3d at 424-25 (some quotations and citations omitted).

Instantly, as the trial court concluded, the second factor pertaining to the existence of an alternate forum is not at issue in the case *sub judice*. **See** *Hovatter*, *supra*. That is, it is undisputed there is an alternate forum (Ohio) available. Moreover, Appellees have stipulated to waive the statute of

- 12 -

limitations, as well as not object on the basis of venue or personal jurisdiction, if Mr. Lyndes re-files in an appropriate jurisdiction.

Accordingly, we instead focus on the "weighty reasons" factor in the trial court's analysis of Appellees' motion to dismiss for *forum non conveniens*. In this regard, we note Mr. Lyndes contends the trial court abused its discretion in finding Appellees demonstrated "weighty reasons" to overcome his choice of forum. He specifically avers that his case is indistinguishable from **Robbins for Estate of Robbins v. Consolidated Rail Corporation**, 212 A.3d 81 (Pa.Super. 2019). Appellees, on the other hand, contend Mr. Lyndes' case is more akin to **Wright v. Consolidated Rail Corporation**, 215 A.3d 982 (Pa.Super. 2019).

In **Wright**, the trial court denied the motion to dismiss Mr. Wright's complaint based on *forum non conveniens*, and Consolidated Rail and CSX Transportation appealed. In that case, Mr. Wright was a non-resident of Pennsylvania, he had been a car inspector at the DeWitt Train Yard in Syracuse, New York, and he averred that, as a direct result of his job duties, he suffered repetitive stress injuries to both shoulders. **See Wright**, **supra**.

Moreover, Mr. Wright lived in New York while working for the railroad companies from 1974 to 2014; however, he moved to South Carolina upon his retirement. All of his treating physicians and medical files were located in New York, New Jersey, or Florida, and all of his fact witnesses were former or

current railroad workers who resided outside of Pennsylvania. ***See Wright***, ***supra***.

Accordingly, based on the record in ***Wright***, this Court held the trial court abused its discretion in denying Consolidated Rail's and CSX Transportation's motion to dismiss based on *forum non conveniens*. In so holding, we noted the trial court erred in giving great deference to Mr. Wright's choice of forum and incorporating "plaintiff-friendly" Pa.R.C.P. 1006(d) venue standards into the analysis.[7] ***Id.*** at 992. Further, we noted the trial court erred in concluding that Consolidated Rail's and CSX Transportation's sworn affidavits were insufficient regarding the New York residency of their witnesses. ***Id.*** at 993. We specifically held that "inasmuch as the trial court determined there is no dispute that [] Wright worked for [Consolidated Rail and CSX Transportation] exclusively in New York, [the] assertion in [their] affidavits that most or all of [their] witnesses reside primarily, if not exclusively, in New York does not require additional record support." ***Id.*** at 993-94. Accordingly, we reversed and remanded as it pertained to the trial court's consideration of Consolidated Rail's and CSX Transportation's affidavits and evidentiary burden. ***Id.***

---

[7] As this Court acknowledged in ***Wright***, "a defendant bears a heavier burden under Pa.R.C.P. 1006(d)(1), which permits [intrastate] forum transfers only when the defendant establishes that a plaintiff's chosen forum is oppressive and vexatious for the defendant." ***Wright***, 215 A.3d at 992.

- 14 -

In *Robbins*, *supra*, Consolidated Rail and Penn Central filed a motion to dismiss for *forum non conveniens* because the decedent's injuries occurred in Indiana and their two proposed witnesses were located outside of Pennsylvania. In response to the motion to dismiss, the plaintiff averred he intended to call four witnesses, who were previous employees of Consolidated Rail in Philadelphia: Dr. Comstock, Mr. Barringer, Mr. Thomas, and Mr. Kovac (the same four witnesses Mr. Lyndes avers he plans to call at trial in this case).

Additionally, the plaintiff argued that "although the decedent worked at the train yard in Indiana, the policies and procedures related to the decedent's exposure to chemicals and cancer-causing substances were determined at Consolidated Rail's headquarters in Philadelphia." *Robbins*, 212 A.3d at 85-86. Moreover, the plaintiff argued the viewing of the work site would not be desirable, and in fact, would be dangerous to a jury. *Id.* at 86. Following a hearing, the trial court denied the motion to dismiss.

On appeal in *Robbins*, Consolidated Rail and Penn Central argued, *inter alia*, that the trial court abused its discretion in weighing the public and private factors, and thus, erred in concluding there were insufficient "weighty reasons" to grant the motion to dismiss. This Court disagreed and held the following:

> With regard to the private factors, the trial court relevantly concluded there was no evidence that Indiana would provide easier access to the decedent's employment records, which are housed in New Jersey and/or Florida. Further, with regard to the cost of obtaining the attendance of willing witnesses and the availability of compulsory process for obtaining the attendance of

unwilling witnesses, the trial court noted [Consolidated Rail and Penn Central] identified two potential witnesses, both of whom were [] former employees: [] Mason, who resides in Illinois, and [] Toney, who resides in [Indiana]. [] Robbins, on the other hand, identified four fact witnesses, all of whom reside in Pennsylvania and were former Consolidated Rail employees. Additionally, the trial court noted [Consolidated Rail and Penn Central] conceded that it is unlikely any party would seek a request to view the train yard at issue.

With regard to the public factors, and Pennsylvania's connection to the lawsuit, it is noteworthy that [] Robbins averred that, although he worked at the train yard in Indiana, the policies and procedures related to his exposure to chemicals and cancer-causing substances were determined at Consolidated Rail's headquarters in Philadelphia. Thus, as the trial court concluded, Pennsylvania citizens have a relation to the litigation.

Based on the aforementioned, we conclude the trial court did not abuse its discretion in weighing the private and public factors. We note it is within the trial court's discretion to weigh some factors more heavily than others and weighing the factors is "not an exercise in counting numbers." ***Bochetto v. Dimeling, Schreiber & Park***, 151 A.3d 1072, 1083 (Pa.Super. 2016). Because [Consolidated Rail and Penn Central] have not met their burden, we affirm.

***Robbins***, 212 A.3d at 90 (footnote omitted).

Furthermore, in ***Robbins***, we distinguished the facts of Robbins' case from ***Hovatter***, ***supra***. In this regard, this Court held:

To the extent [Consolidated Rail and Penn Central] aver the facts of this case are indistinguishable from ***Hovatter***, ***supra***, we disagree. In ***Hovatter***, this Court held the trial court erred in failing to dismiss the plaintiff's action, which was filed in Pennsylvania, under the doctrine of *forum non conveniens*. However, in the instant matter, unlike in ***Hovatter***, there were Pennsylvania witnesses identified by a party and a viewing of the site was not at issue. Further, we note in the case *sub judice*, unlike in ***Hovatter***, [] Robbins specifically averred the policies and procedures related to the decedent's exposure to alleged chemical/cancer-causing substances were developed by [Consolidated Rail] at its headquarters in Philadelphia. There was

no such allegation made in **Hovatter** as to CSX Transportation (the sole defendant in **Hovatter**).

**Robbins**, 212 A.3d at 90 n.8.

Recently, in **Ficarra v. Consolidated Rail Corporation**, 242 A.3d 323 (Pa.Super. 2020),[8] this Court examined the holdings of **Wright**, **supra**, and **Robbins**, **supra**. In **Ficarra**, the record before the trial court demonstrated that none of the plaintiffs resided in Pennsylvania, and all of the plaintiffs worked for the railroad companies outside of Pennsylvania from 1953 to 2012. In its motion to dismiss, the railroad companies averred none of the potential fact witnesses or sources of proof resided in Pennsylvania; the railroad companies would be unable to avail themselves of compulsory process for attendance of unwilling non-Pennsylvania witnesses; there would be a high cost of obtaining attendance of willing out-of-state witnesses; a fact-finder in Pennsylvania would be unable to view easily the plaintiffs' work premises; and

---

[8] We note that **Ficarra** involved nine different plaintiffs, and we consolidated the cases in this Court. In all nine cases, the trial court denied the railroad defendants' motions to dismiss. On appeal, we reversed the orders in eight of the cases and concluded the trial court abused its discretion in holding the defendants did not provide sufficient "weighty reasons" for dismissal. **See id.** However, we affirmed in one of the cases.

Specifically, with regard to the latter, we noted that the procedural posture of the case was such that it was "trial ready" with discovery complete and a trial term set by the Philadelphia Court of Common Pleas. **See id.** Thus, in weighing the factors, we concluded the trial court did not abuse its discretion in holding dismissal would be inappropriate based on *forum non conveniens*. **See id.** We specifically note the case *sub judice* is distinguishable from the latter case in **Ficarra** since the case is not "trial ready" in Philadelphia County.

there would be a burden on Pennsylvania courts, taxpayers, and jury pool. *Ficarra*, *supra*.

In response, the plaintiffs in *Ficarra* argued they intended to call the same witnesses as the plaintiff in *Robbins*: Dr. Comstock, Mr. Barringer, Mr. Thomas, and Mr. Kovac. Based on the record before it, the trial court determined that the plaintiffs' four witnesses had worked for Consolidated Rail, but only Dr. Comstock undisputedly continued to reside in Pennsylvania. *See Ficarra*, *supra*. Moreover, the trial court determined that all of the plaintiffs' former co-workers and supervisors, who were potential witnesses, lived outside of Pennsylvania, the plaintiffs' injuries occurred outside of Pennsylvania, and the plaintiffs' physicians, as well as medical records, were outside of Pennsylvania. *See id.*

Based on the aforementioned, the trial court in *Ficarra* denied the railroad companies' motions to dismiss based on *forum non conveniens*; however, in its subsequent Pa.R.A.P. 1925(a) opinions, the trial court opined that it should have granted the railroad companies' motions. *See id.* Upon review, this Court agreed.

Specifically, we acknowledged the plaintiffs in *Ficarra*, similar to the plaintiff in *Robbins*, listed Dr. Comstock, Mr. Barringer, Mr. Thomas, and Mr. Kovac as four witnesses they intended to call at trial. We also acknowledged that "at first glance [the] plaintiffs' cases strikingly resemble *Robbins*."

*Ficarra*, 242 A.3d at 336. However, we concluded there were two important distinctions between *Ficarra* and *Robbins*.

Namely, in *Robbins*, the plaintiff set forth a specific argument that Consolidated Rail developed policies and procedures in its Philadelphia office that created the conditions leading to the plaintiff's injuries; however, in *Ficarra*, the plaintiffs provided scant argument as to the relevance of the former Consolidated Rail employees' testimony. Furthermore, based on the record in *Robbins*, the trial court found all four of the former Consolidated Rail employees resided in Pennsylvania; however, based on the record, the trial court in *Ficarra* found only Dr. Comstock resided in Pennsylvania.

Accordingly, in *Ficarra*, this Court relevantly held:

> [W]e conclude the trial court abused its discretion in applying the wrong evidentiary burden….However, given the records before it in these cases, we agree with the trial court's re-analysis and find these cases distinguishable from *Robbins*. All of [the] plaintiffs' former co-workers, supervisors, and diagnosing and treating physicians reside outside Pennsylvania. The work sites are outside Pennsylvania. The only connection to Pennsylvania relevant to [the] plaintiffs' claims is that four individuals who used to work in Philadelphia were allegedly involved in the drafting and implementation of procedures that led to [the] plaintiffs' injuries. However, on the record before the trial court, only one of those witnesses undisputedly resides in Pennsylvania currently. Moreover, [the] plaintiffs largely failed to explain the relevance of the former employees' testimony. Weighing the private and public interest factors using the correct evidentiary burden, the trial court here ultimately concluded that [the railroad companies] presented sufficient weighty reasons to warrant dismissal for *forum non conveniens*[.] We discern no abuse of discretion by the trial court in reaching this conclusion. *See Robbins*, 212 A.3d at 90 ("[I]t is within the trial court's discretion to weigh some factors more heavily than others and weighing the factors is not an exercise in counting numbers.")

> (citation and quotation marks omitted). Accordingly, we vacate the orders denying the motions to dismiss…and remand to the trial court to dismiss these cases to permit re-filing in an appropriate jurisdiction.

*Ficarra*, 242 A.3d at 337.

Preliminarily, similar to our initial assessment in *Ficarra*, we acknowledge the facts of the case *sub judice* appear at first glance to resemble *Robbins*. However, there are important differences, which weigh in favor of dismissal.

First, with respect to the private factors involved, in *Robbins*, where the decedent worked exclusively in Indiana, the railroad companies indicated it planned to call as witnesses two of the decedent's former supervisors: Dale Mason, who resided in Illinois, and Charles Toney, who resided in Indiana. Both of these supervisors were retired.

However, in the case *sub judice*, the trial court found that a majority of potential fact witnesses and sources of proof were located significantly closer to Lorain, Ohio, the location where Mr. Lyndes claimed he was exposed to toxic substances while working for Appellees, than to Philadelphia, Pennsylvania, where Mr. Lyndes has never lived or worked.

The trial court pointed out that Mr. Lyndes lives with his wife in Beaver Falls, Pennsylvania which is approximately 218 miles closer to Lorain, Ohio than Philadelphia, Pennsylvania. The trial court emphasized that all of Mr. Lyndes' coworkers and supervisors live in Ohio or in locations closer to Ohio than Philadelphia, Pennsylvania. In addition, the trial court noted that Mr.

Lyndes' medical providers, which includes diagnosing and treating physicians, and his medical records are located in western Pennsylvania, which is significantly closer to Lorain, Ohio than to Philadelphia. The trial court acknowledged that Appellees and these witnesses would experience substantial disruption to their business, as well as greater personal inconvenience, if they are required to travel to Philadelphia, Pennsylvania, as opposed to Ohio.

Second, as it pertains to the public factors, in the case *sub judice*, the trial court concluded there would be more administrative difficulties if the case is tried in Philadelphia, Pennsylvania, as opposed to Ohio. There was no such finding by the trial court in **Robbins**.

We also recognize the trial court accepted in this case that Mr. Lyndes identified four witnesses, all of whom formerly worked at the corporate headquarters for Consolidated Rail in Philadelphia.[9] Nevertheless, the trial court found that even if these four witnesses' testimony was relevant to Mr. Lyndes' claims, such testimony would not change its conclusion that Ohio was a more convenient forum due to the fact that a majority of the witnesses with

_____

[9] We note the trial court did not determine whether Mr. Lyndes had provided a sufficient factual basis to support his claims that three of his proposed witnesses (Dr. Comstock, Mr. Thomas, and Mr. Kovac) resided in or near Philadelphia County. The trial court appears to accept Mr. Lyndes' contention that Appellant's four proposed witnesses "would be inconvenienced by having trial in Ohio instead of Philadelphia." **Id**. We note that it is undisputed that Mr. Lyndes' fourth witness, Mr. Barringer, lives in Naples, Florida.

any connection to this case live considerably closer to Lorain, Ohio than Philadelphia, Pennsylvania. *Id*. Accordingly, upon weighing all of the relevant factors, the trial court concluded that Appellees met their burden of demonstrating "weighty reasons" for dismissal.

Based on the record, we find no abuse of discretion. The trial court properly weighed the private and public factors using the correct evidentiary burden. ***Ficarra***, ***supra***. Thus, we affirm the order granting Appellees' motion to dismiss.

As this Court has previously recognized, it is within the trial court's discretion to weigh some factors more heavily than others and weighing the factors is not "an exercise in counting numbers." ***Bochetto***, 151 A.3d at 1083. ***See Hovatter***, ***supra*** (holding that, in reviewing orders dismissing an action under the doctrine of *forum non conveniens*, if there is any basis for the trial court's decision, the decision must stand).

Affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/21